J-A06029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GREG ALAN GIBBS, SR. :
:
Appellant : No. 499 WDA 2025

Appeal from the PCRA Order Entered March 28, 2025
In the Court of Common Pleas of Bedford County Criminal Division at
No(s): CP-05-CR-0000008-2009

BEFORE: OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.: **FILED: March 30, 2026**

Greg Alan Gibbs, Sr. (Appellant), appeals from the order dismissing, as untimely filed, his third petition for relief under the Post Conviction Relief Act (PCRA).[1] Additionally, Appellant's court-appointed counsel (Counsel) has petitioned to withdraw from representation pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). We grant Counsel's petition to withdraw and affirm the PCRA court's order.

On December 16, 2009, a jury convicted Appellant of six counts each of rape of a child and indecent assault; five counts of aggravated indecent assault; and three counts each of involuntary deviate sexual intercourse with

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

a child, incest, endangering the welfare of children, and corruption of a minor.[2]
The charges involved three minor victims: Appellant's two biological children
and his stepchild.

A prior panel of this Court summarized the evidence adduced at trial:

[T]he Commonwealth's chief witness was Tammy Sue Gibbs [(Ms. Gibbs)], Appellant's ex-wife and mother to the alleged child victims. After informing the jury that she had pled guilty and served a 1½-year prison sentence for sexually abusing the children in this case, Ms. Gibbs testified to the actions forming the basis of the charges against Appellant. N.T. 12/15/09, at 40-41. She first described an incident occurring when the couple still lived in Appellant's parents' Fayette County house, about four months prior to moving to Bedford County. *Id.* at 90. According to Ms. Gibbs, she had just given their four-year-old daughter, H.G., a bath and handed her to Appellant, only to encounter Appellant shortly thereafter in the [child's] bedroom removing his penis from H.G.'s vagina. *Id.* at 41-43. Ms. Gibbs went downstairs to call police but never acted on the intent, as she caved under the pressure of Appellant's accusation, made before his parents, that she was lying. *Id.* at 43.

The couple moved their family to Bedford County in December … 2004 to live with Ms. Gibbs's parents, after Appellant's parents asked them to leave. *Id.* at 47. The next incident involved Ms. Gibbs looking … for H.G. when she was not with her siblings as expected, and again finding [H.G.] in their upstairs bedroom with Appellant, who was removing his penis from her vagina. *Id.* at 49. Appellant pushed Ms. Gibbs away when she attempted to intervene, but Ms. Gibbs took hold of H.G. and told [Appellant] to leave her children alone. *Id.* at 50.

Ms. Gibbs continued to reside with Appellant, however, and Appellant continued to abuse the children. The next abuse that Ms. Gibbs witnessed was when she was cooking supper downstairs and went looking for H.G. She found H.G. upstairs performing oral sex on Appellant. *Id.* at 50. She pulled [H.G.] off Appellant and asked Appellant to leave the house, but he refused. *Id.* at

---

[2] 18 Pa.C.S.A. §§ 3121(c), 3126(a)(7), 3125(a)(7), 3123(b), 4302, 4304(a)(1), 6301(a)(1).

50. The next incident involved Ms. Gibbs returning to their bedroom after a bathroom visit to find Appellant with his finger inserted in his seven-year-old stepdaughter, C.K.'s, vagina. *Id.* at 51. Appellant initially denied doing anything and refused to sleep in a different room. When confronted with Ms. Gibbs's threat to tell her parents, [Appellant] promised to stop. *Id.* Ms. Gibbs testified that she never told anyone because "whatever I heard or seen like in Fayette County was supposed to stay in their home. And I asked [Appellant] why I had to keep it all in. But he wouldn't tell me." *Id.*

Ms. Gibbs then testified to witnessing Appellant rape C.K. and H.G. at the same time by alternating between the two girls. *Id.* at 52. [Ms. Gibbs] claimed [Appellant] pushed her away again, and attempted to justify his actions [by claiming he had] been "molested" by his stepfather from the age of five. *Id.* [Ms. Gibbs] clarified at trial that she witnessed H.G. perform oral sex on Appellant just the one prior time, and then testified that she also witnessed C.K. performing oral sex on Appellant in the bedroom just before bath time one evening. *Id.* at 53. [Ms. Gibbs] described a "bad argument" between her and Appellant on that occasion. *Id.* at 54.

According to Ms. Gibbs's testimony, the couple's five-year-old son, [G.G.,] was not immune to Appellant's offenses, as Ms. Gibbs described finding Appellant with his hand on G.G.'s penis. *Id.* [Ms. Gibbs] again claimed she asked [Appellant] to leave, but he stated he would take H.G. and G.G. with him, because he had full custody of the children. *Id.* at 54-55.

All three children were witness to a sexual encounter between Ms. Gibbs and Appellant, which devolved into a depraved tutorial involving the parents teaching the children specific sexual acts. *Id.* at 55. Upon climax, Appellant laughed in the presence of the children, telling them, "This is how you ejaculate on girls." *Id.* at 56. Ms. Gibbs next described how she fulfilled Appellant's "fantasy that three girls go at it" by performing oral sex on C.K. and H.G. while [Appellant] watched. *Id.* at 56-57.

Ms. Gibbs testified that she eventually revealed the couple's misconduct to law enforcement and Bedford County Children and Youth Services [in 2007], providing them with a written statement—four months before [Ms. Gibbs] would be arrested—in which she personally confessed to abusing all three children. *Id.*

at 58-59. She explained she came forward because she "couldn't take it no more for what we did to our kids." ***Id.*** at 64.

Defense counsel cross-examined Ms. Gibbs on various inconsistent statements in which she [had] denied any misconduct by Appellant, prior to her giving the 2007 confession. ***Id.*** at 67-76, 97-99. Also revealed were two letters written by Ms. Gibbs while [she was] in jail, one year after submitting her confession, in which she denied that Appellant had done anything wrong. ***Id.*** at 77-78. [Ms. Gibbs wrote in each letter,] "I'm not testifying against [Appellant] for something that did not happen[.]" … ***Id.*** at 79. When pressed on whether she was telling the truth then or at trial, Ms. Gibbs asserted [she told the truth] at trial. ***Id.*** at 79-80.

***Commonwealth v. Gibbs***, 32 A.3d 275, 1050 WDA 2010 (Pa. Super. 2011) (unpublished memorandum at 2-6) (some record citations and punctuation modified).

Following Appellant's conviction, on April 26, 2010, the trial court imposed an aggregate sentence of 120 to 240 years' imprisonment. Appellant appealed to this Court. We remanded for resentencing because the trial court had applied an incorrect edition of the Sentencing Guidelines when sentencing Appellant. ***See id.*** (unpublished memorandum at 16-21).[3]

On remand, the trial court resentenced Appellant to an aggregate term of 137 to 307 years' imprisonment. Appellant timely appealed, and this Court affirmed his judgment of sentence. ***See Commonwealth v. Gibbs***, 82 A.3d

---

[3] We affirmed Appellant's judgment of sentence in all other respects. ***Gibbs***, 32 A.3d 275 (unpublished memorandum at 21). Significantly, we rejected Appellant's challenge to the sufficiency of the evidence, including his argument that Ms. Gibbs's "prior inconsistent statements in which she defended Appellant" rendered her trial testimony "unworthy of credit." ***Id.*** (unpublished memorandum at 11).

1073, 959 WDA 2012 (Pa. Super. 2013) (unpublished memorandum). On February 28, 2014, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Gibbs*, 86 A.3d 232 (Pa. 2014).

On September 23, 2014, Appellant filed a timely *pro se* PCRA petition, his first. The PCRA court appointed counsel for Appellant (first PCRA counsel), who filed an amended petition. Appellant's amended petition alleged that his trial counsel rendered ineffective assistance by failing to pursue plea negotiations or discuss with Appellant the possibility of a plea deal. *See Commonwealth v. Gibbs*, 251 A.3d 1235, 379 WDA 2020 (Pa. Super. 2021) (unpublished memorandum at 2-4). Following an evidentiary hearing, the PCRA court denied the amended petition. *Id.* (unpublished memorandum at 4-5). Appellant appealed, and this Court affirmed the PCRA court's order. *See generally id.* On September 28, 2021, our Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Gibbs*, 262 A.3d 1137 (Pa. 2021).

On December 14, 2021, Appellant filed a *pro se* PCRA petition, his second. Appellant alleged that Ms. Gibbs had given false testimony and hearsay testimony at Appellant's preliminary hearing, and argued the Commonwealth had presented insufficient evidence at the preliminary hearing to bind the charges over for trial. *See generally* PCRA Petition, 12/14/21. On October 25, 2022, after issuing appropriate notice under Pa.R.Crim.P. 907,

the PCRA court dismissed the petition as untimely filed.[4] *See* Order, 10/25/22. No appeal followed.

On January 25, 2023, Appellant filed the instant *pro se* PCRA petition, his third. Appellant raised several claims, including a claim under ***Brady v. Maryland***, 373 U.S. 83 (1963), alleging that the Commonwealth had knowingly used Ms. Gibbs's perjured testimony at trial. *See* PCRA Petition, 1/25/23, at 19 (unpaginated) (citing ***United States v. Agurs***, 427 U.S. 97, 103 (1976) (observing that "the rule of ***Brady***" applies where the prosecution fails to disclose evidence "demonstrat[ing] that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury.")).[5]

The PCRA court appointed Counsel to represent Appellant. Counsel filed an amended petition, raising only the above ***Brady*** claim. *See* Amended PCRA Petition, 10/9/24, ¶¶ 4, 6-8.[6] Appellant alleged this claim was timely

---

[4] The PCRA requires that any PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment of sentence becomes final," unless the petitioner pleads and proves the applicability of an enumerated exception, discussed *infra*. 42 Pa.C.S.A. § 9545(b).

[5] Appellant does not challenge the Commonwealth's failure to disclose any particular piece of evidence. Rather, his assertion that the Commonwealth knew Ms. Gibbs was lying appears to be based on her prior inconsistent statements and her plea agreement, which required her to testify against Appellant. *See generally* PCRA Petition, 1/25/23; *see also* N.T., 12/15/09, at 101-02 (Ms. Gibbs's testimony regarding her plea agreement).

[6] At the subsequent evidentiary hearing, Appellant confirmed that he withdrew the other claims raised in his *pro se* petition. *See* N.T., 3/28/25, at 6-7.

filed under the newly-discovered fact exception to the PCRA's one-year jurisdictional time-bar. *Id.* ¶ 9 (citing 42 Pa.C.S.A. § 9445(b)(1)(ii) (providing an exception to the time-bar where the petitioner pleads and proves that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence")). Appellant asserted he satisfied this exception "because he was not aware of these issues until he received his trial transcripts from [first PCRA counsel] on July 7, 2022." *Id.* ¶ 10. Appellant averred he could not have obtained his trial transcript earlier, alleging each of his previous attorneys had abandoned him by failing to send him the trial transcript, despite his requests for it. *Id.* ¶¶ 5, 11-12.

On March 28, 2025, the PCRA court held an evidentiary hearing on the timeliness of Appellant's claim, at which Lucas Kelleher, Esquire (Attorney Kelleher),[7] and Appellant testified. Attorney Kelleher testified that he did not recall whether he ever obtained the trial transcript, as he had represented Appellant primarily in connection with sentencing issues and relied on the sentencing transcript. N.T., 3/28/25, at 10. Attorney Kelleher testified that he was unsure whether Appellant had specifically requested the trial transcript. *See id.* at 10-13.

---

[7] The trial court appointed Attorney Kelleher to represent Appellant on September 30, 2011, after this Court remanded for resentencing, following Appellant's first direct appeal. *See* Order, 9/30/11. Attorney Kelleher represented Appellant through his resentencing and second direct appeal.

Appellant testified that he had requested the trial transcript from his trial counsel, but trial counsel did not provide him with the transcript. *Id.* at 14. Appellant also testified that Attorney Kelleher did not provide him with the trial transcript. *Id.* Appellant testified that he finally received the trial transcript from his first PCRA counsel on July 7, 2022. *Id.* at 15.

Counsel asked Appellant, "since you were at the trial, why did it take you until you got the trial transcripts to discover that you were convicted by perjured testimony or by a lie?" *Id.* at 17. Appellant answered as follows:

> Because when I was at trial, I did not understand the law. … I didn't understand the legal system. When I got sent [to prison], I started learning the law and getting help to understand things. Then, I wrote to get the trial transcripts from [first PCRA counsel]. And whenever I got them, that's when I discovered that [Ms. Gibbs] lied 35 times between the prelim[inary hearing] and the trial.

*Id.* Appellant testified that a "buddy" in prison "explain[ed] things to me on how the legal system runs," which prompted Appellant to

> start[] looking up about perjury testimony, lying testimony, and the oath you've got to take before you get on [the] stand, stuff like that. And that's how I started picking up on other things that was all right to the legal system [*sic*] to make me request the trial transcripts and make me do the PCRA [petition].

*Id.* at 18. Appellant agreed that, during trial, he pointed out to trial counsel that Ms. Gibbs was lying in her testimony. *Id.* at 17-18. However, Appellant testified that he needed the transcript "[t]o actually pinpoint" all 35 of Ms. Gibbs's lies. *Id.* at 19.

At the hearing's conclusion, the PCRA court determined that Appellant failed to establish the newly-discovered fact exception. *Id.* The court found the trial transcript did not reveal any new fact because Appellant was present during trial and heard Ms. Gibbs testify. *Id.* at 20. The court entered an order dismissing the petition as untimely filed. *See* Order, 3/28/25.

Appellant timely appealed. Counsel filed a statement of intent to withdraw from representation pursuant to Pa.R.A.P. 1925(c)(4). The PCRA court filed an opinion in accordance with Rule 1925(a). On October 3, 2025, Counsel filed in this Court a petition to withdraw from representation and an accompanying *Turner*/*Finley* brief.

We first address whether Counsel has satisfied the procedural requirements of *Turner*/*Finley* in petitioning to withdraw. *Commonwealth v. Knecht*, 219 A.3d 689, 691 (Pa. Super. 2019) ("When presented with a brief pursuant to *Turner*/*Finley*, we first determine whether the brief meets the procedural requirements of *Turner*/*Finley*."). This Court has explained:

> A *Turner*/*Finley* brief must: (1) detail the nature and extent of counsel's review of the case; (2) list each issue the petitioner wishes to have reviewed; and (3) explain counsel's reasoning for concluding that the petitioner's issues are meritless. Counsel must also send a copy of the brief to the petitioner, along with a copy of the petition to withdraw, and inform the petitioner of the right to proceed *pro se* or to retain new counsel. If the brief meets these requirements, we then conduct an independent review of the petitioner's issues.

***Knecht***, 219 A.3d at 691 (citations omitted). Substantial compliance with the requirements to withdraw as counsel will satisfy the ***Turner***/***Finley*** criteria. ***Commonwealth v. Karanicolas***, 836 A.2d 940, 947 (Pa. Super. 2003).

Our review discloses that Counsel has complied with the above requirements. In his ***Turner***/***Finley*** brief, Counsel (1) detailed his review of the record and law; (2) listed the issue Appellant wishes to have reviewed; and (3) explained why Appellant's issue lacks merit. ***See Turner***/***Finley*** Brief at 7-14. Additionally, Counsel notified Appellant of Counsel's request to withdraw, advised Appellant of his right to retain new counsel and/or raise any issues he deems worthy of consideration, and furnished Appellant with copies of the petition to withdraw and ***Turner***/***Finley*** brief. ***See*** Petition to Withdraw as Counsel, 10/3/25, Attachment (correspondence to Appellant dated October 3, 2025). We therefore conclude Counsel has substantially complied with the ***Turner***/***Finley*** procedural requirements. Accordingly, we proceed to independently review Appellant's claim.

In his ***Turner***/***Finley*** brief, Counsel identifies Appellant's sole issue: whether the PCRA court erred or abused its discretion in determining Appellant failed to establish the newly-discovered fact exception to the PCRA's one-year time-bar? ***See Turner***/***Finley*** Brief at 12-13.

We review the dismissal of a PCRA petition to determine "whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Busanet***,

54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

Before reaching a PCRA petition's substantive merits, we must first consider its timeliness. *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014). "If a PCRA petition is untimely, a court lacks jurisdiction." *Commonwealth v. Reeves*, 296 A.3d 1228, 1230-31 (Pa. Super. 2023). A PCRA petition "shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3).

Instantly, Appellant's judgment of sentence became final on May 29, 2014, ninety days after the Pennsylvania Supreme Court denied allowance of appeal following Appellant's second direct appeal, when the time to seek review in the United States Supreme Court expired. *See Gibbs*, 86 A.3d 232; *see also Commonwealth v. Reed*, 107 A.3d 137, 141 (Pa. Super. 2014) (citing U.S. Sᴜᴘ. Cᴛ. R. 13). Appellant's January 25, 2023, PCRA petition is therefore facially untimely.

"However, a petitioner may overcome the PCRA's time-bar if he pleads and proves one of the statutory exceptions set forth in 42 Pa.C.S.A. § 9545(b)." *Reeves*, 296 A.3d at 1231; *see also* 42 Pa.C.S.A. § 9545(b)(2)

- 11 -

(requiring any petition invoking an exception to be filed within one year of the date the claim could have been presented). Pertinently, one exception is that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence…." 42 Pa.C.S.A. § 9545(b)(1)(ii). This exception

> requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests; a petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence.

*Commonwealth v. Sanchez*, 204 A.3d 524, 526 (Pa. Super. 2019). Moreover, "the focus of this exception is on the newly discovered facts, **not on a newly discovered or newly willing source for previously known facts**." *Commonwealth v. Lopez*, 249 A.3d 993, 999 (Pa. 2021) (quotation marks and citation omitted; emphasis in original).

In its opinion, the PCRA court determined that Appellant failed to establish the newly-discovered fact exception, reasoning as follows:

> [Appellant] argued that he only realized that the Commonwealth used perjured testimony upon receiving a copy of his [trial] transcript in 2022. He further asserted that it was a newly-discovered fact warranting an exception to the PCRA's jurisdictional time-bar. We are not persuaded.
>
> [Appellant] was present at his trial. Therefore, we found that he could have (or should have) known about any false testimony at that time. There is little that can be argued in support of the transcript having made any difference in the discovery of that knowledge. Moreover, [Appellant] did not provide any evidence to show that the Commonwealth knew [Ms. Gibbs's] testimony was false. [Appellant] merely reiterated the

- 12 -

same position he took at trial, *i.e.*, the [Commonwealth's chief] witness[, Ms. Gibbs,] lied.

[Appellant] offered no evidence of anything that was not presented in open court during his trial. Therefore, we could not find that the [p]etition was timely filed.

PCRA Court Opinion, 7/21/25, at 5-6.

Our review discloses that the PCRA court's findings are supported by the record, and its legal conclusions are sound. We agree with the PCRA court that Appellant failed to identify any fact previously unknown to him. The trial transcript upon which he relies is, at best, a newly-discovered source for previously known facts. **See Lopez**, 249 A.3d at 999. As Appellant failed to establish any exception to the PCRA's jurisdictional time-bar, we discern no error or abuse of discretion in the PCRA court's dismissal of Appellant's PCRA petition as untimely filed. Appellant's claim therefore merits no relief.

Our independent review of the record discloses no meritorious, non-frivolous issues Appellant could have raised. Accordingly, we grant Counsel's petition to withdraw and affirm the PCRA court's order dismissing the petition.

Petition to withdraw granted. Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/30/2026

- 13 -